The FIRST STATE BANK AND TRUST COMPANY OF GUTHRIE, OKLAHOMA, Appellant,

v.

SAND SPRINGS STATE BANK OF SAND SPRINGS, OKLAHOMA, et al., Appellees.

No. 75–1187.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 10, 1975.

Decided Jan. 16, 1976.

Thomas R. Williams, Williams & Hirzel, Guthrie, Okl., for appellant.

Frederic Dorwart, Tulsa, Okl., for First National Bank, Tahlequah, Okl., appellee.

Charles W. Mooney, Jr., Oklahoma City, Okl., for Oklahoma State Bank and Trust Co. of Vinita, Okl., appellee.

Irvine Ungerman, Tulsa, Okl., for Sand Springs State Bank of Sand Springs, Okl., and Boulder Bank and Trust Co. of Tulsa, Okl., appellees.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

First State Bank and Trust Company of Guthrie, Oklahoma, (Guthrie), appeals a judgment decreeing that it was not entitled to collect funds represented by certain certificates of deposit. A statement of the facts will serve to place the controversy in perspective. Gulfco Investment Corporation, (Gulfco), together with several wholly owned subsidiaries,[1] was in corporate reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., when Guthrie, a creditor of Gulfco, filed an application with the District Court, sitting as a Court of Bankruptcy pursuant to 11 U.S.C.A. § 1, for a determination of the trustee's interest in certain certificates of deposit, which Guthrie claimed to own. The application was opposed by several banks, also creditors of Gulfco, who had issued the certificates of deposit. These banks, Sand Springs State Bank of Sand Springs, Oklahoma, Boulder Bank and Trust Company of Tulsa, Oklahoma, Oklahoma State Bank and Trust Company of Vinita, Oklahoma, The First National Bank of Tahlequah, Oklahoma, and First State Bank and Trust Company of Oklahoma City, Oklahoma, shall hereinafter be referred to as the issuing banks. The trustee responded to the application. He initially claimed the certificates of deposit and the funds represented thereby as an asset of Gulfco's estate. At a subsequent proceeding, however, the trustee conceded that the conflicting claims of the banks to the certificates of deposit would not affect the reorganization because it would be an offset to the debtor's estate. The trustee did ask that Guthrie and the issuing banks make a statement of their respective claims to the certificates of deposit because these claims could affect the other claims filed in the debtor's estate. None of the transactions could be set aside as preferential transfers due to the fact that they all occurred more than four months prior to the filing of the Chapter X proceedings.

The controversy presented is essentially one between banks asserting conflicting claims to the funds represented by the certificates of deposit.[2] Gulfco borrowed money from the issuing banks and was required, pursuant to the respective loan agreements, to place 15% of the amount borrowed in non-interest bearing certificates of deposit. This amount was designated a "compensating balance." It increased the lender's yield by virtue of the fact that Gulfco paid interest on the full amount of the loan even though it had actual use of only 85% of the amount borrowed. In addition, then, to

---

1. The subsidiaries of Gulfco involved in the Chapter X proceeding are Family Loan Inc., Gulf South Corporation, Intertek Financial Corporation, Aristocrat Motor Hotel of Hot Springs, Inc., Horseshoe Development Corporation, and Delta Mortgage Corporation.

2. In the proceedings below, Guthrie asserted claims superior to the issuing banks in nine certificates of deposit. The Court ruled that Guthrie was not entitled to collect from the issuing banks on eight of the certificates. The Court made no determination as to who possessed the superior claim to the certificate of deposit issued by First State Bank and Trust Company of Oklahoma City. This bank did not assert a right superior to that of Guthrie and the Court held there was no actual controversy properly justiciable as regards that particular certificate. [R. Vol. I, p. 259].

the interest being paid by Gulfco on the loans, the issuing banks had the amount withheld as compensating balances on deposit. The issuing banks could, insofar as we can ascertain, use these funds to produce additional revenue for the issuing banks.

Gulfco held the certificates of deposit but drew no interest on them. In an attempt to make use of the funds represented by the certificates of deposit, Gulfco entered into an arrangement with Guthrie whereby Gulfco would assign the certificates of deposit to Guthrie and Guthrie would, in turn, pay to Gulfco the full amount of the certificate. The gain to be made by Guthrie from this arrangement would be realized when Gulfco would pre-pay interest to Guthrie on the amount of the certificate at 1% above the prime rate. All of the certificates matured at either three month or six month intervals. They were automatically renewable. Prior to the maturity date Guthrie would notify Gulfco that the certificates of deposit were due, whereupon Gulfco would pre-pay interest to Guthrie for another period in order to prevent the certificates from being collected. Obviously, if the certificates had been sent by Guthrie to the issuing bank for collection, the Gulfco loan would have been called because the requisite 15% compensating balance was not on deposit. Thus, the success of the scheme rested on Gulfco's ability to meet the pre-paid interest obligation to Guthrie prior to the maturity date of the certificates.

When financial difficulties befell Gulfco, it was no longer able to meet the interest payments to Guthrie. Guthrie then proceeded to submit the certificates of deposit to the issuing banks for collection. Each of the issuing banks refused Guthrie's demand for payment of the funds represented by the certificates. The issuing banks, with the exception of First State Bank and Trust Company of Oklahoma City, maintained that they were not obligated to pay Guthrie for the following reasons: proper notice of the assignment from Gulfco to Guthrie

had not been given; the certificates were non-negotiable and therefore any interest acquired by Guthrie was subject to the prior claims and defenses of the issuing banks; and that certain certificates were not due.

When payment was refused, Guthrie initiated the proceedings below by filing the application for a determination of the trustee's interest in the certificates of deposit. Sand Springs State Bank and Boulder Bank and Trust Company made special appearances challenging the Court's jurisdiction. They also moved to quash service of Guthrie's interrogatories. Jurisdiction was also challenged by First National Bank of Tahlequah, who specially appeared and by Oklahoma State Bank and Trust Company of Vinita by motion to dismiss. First State Bank and Trust Company of Oklahoma City did not contest jurisdiction, and did not challenge Guthrie's claim to the certificate of deposit.

Motions for summary judgment were filed by Guthrie, First National Bank of Tahlequah and Oklahoma State Bank and Trust Company of Vinita. All interested parties agreed to submit the case to the Court for final disposition. On the apparent request of the Court, briefs were filed by the parties in support of or in opposition to the respective motions for summary judgment. The Court in entering the subject judgment obviously intended thereby to grant the motion of the issuing banks.

The Court made findings of fact and conclusions of law, holding that Guthrie could not collect the funds represented by the certificates of deposit issued by Sand Springs State Bank, Boulder Bank and Trust Company, First National Bank of Tahlequah and Oklahoma State Bank and Trust Company of Vinita. No decision was rendered regarding the certificate of deposit issued by First State Bank and Trust Company of Oklahoma City.

Guthrie's appeal presents the following issues: (1) Is Guthrie entitled to the funds represented by the certificates of deposit in preference to the issuing

banks, and the trustee in the Chapter X proceedings? (2) Did the issuing banks meet the burden of proof required of them in establishing their claimed rights to the funds represented by the certificates of deposit? (3) If Guthrie is not entitled to the funds represented by the certificates, are the issuing banks entitled to these funds in preference to the trustee in the Chapter X proceeding?

## I.

We consider the question of whether the District Court, sitting as a Court of Bankruptcy, had subject matter jurisdiction in this action. The parties did not raise this issue on appeal. Even so, jurisdictional questions are of primary consideration and can be raised at any time by courts on their own motion. *Barr v. United States*, 478 F.2d 1152 (10th Cir. 1973), cert. denied, 414 U.S. 910, 94 S.Ct. 233, 38 L.Ed.2d 148 (1973); *Bledsoe v. Wirtz*, 384 F.2d 767 (10th Cir. 1967); *McGrath v. Kristensen*, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950).

11 U.S.C.A. § 1 recognizes a district court as a court of bankruptcy. In order to so act it must find jurisdiction under the Bankruptcy Act. The powers of the bankruptcy court cannot exceed those expressly conferred by Congress and those deemed necessary to effect jurisdiction. *In re Ross Sand & Gravel, Inc.*, 289 F.2d 311 (6th Cir. 1961). Bankruptcy courts are, accordingly, courts of limited jurisdiction whose power to act must be found expressly or impliedly in the Bankruptcy Act. *Ruhter v. Internal Revenue Service*, 339 F.2d 575 (10th Cir. 1964); *O'Dell v. United States*, 326 F.2d 451 (10th Cir. 1964).

In the case at bar, the Bankruptcy Court correctly termed the controversy as one essentially between banks.

. . . [T]he real question is whether or not these CD's assigned to the Guthrie Bank become superior to the, paramount to the issuing bank. [R., Vol. III, p. 11].

The Trustee agreed with the Court. He stated that this controversy between the banks did not ultimately affect the reorganization. No interest was claimed by the Trustee in the certificates. This was a concession that the funds represented by the certificates were not part of the debtor's estate. The Trustee did ask that Guthrie and the issuing banks make a statement of their respective claims to the certificates before the Court, in view of the fact that the amount of these claims could affect the other claims filed or to be filed in the debtor's estate. Presumably, the Trustee's concern was that, depending upon who was awarded the amount represented by the certificates, the claims against the debtor's estate would be offset by that amount.

With this background we must now determine whether the Court had subject matter jurisdiction. A court of bankruptcy cannot entertain jurisdiction of a private controversy which does not relate to matters pertaining to bankruptcy. *Associated Electronic Supply Co. of Omaha v. C. B. S. Electronic Sales Corporation*, 288 F.2d 683 (8th Cir. 1961). In the same vein, a bankruptcy court lacks jurisdiction of a controversy solely and exclusively between third parties which does not involve, directly or indirectly, the bankrupt or its property. *Central States Corp. v. Luther*, 215 F.2d 38 (10th Cir. 1954); *O'Dell, supra.* Furthermore, a bankruptcy court ordinarily lacks jurisdiction of a controversy between parties over a matter in which the trustee asserts no interest. *In re Burton Coal Co.*, 126 F.2d 447 (7th Cir. 1942).

Courts have, however, recognized this exception to the above rules: That a court of bankruptcy *does* have jurisdiction to determine a dispute between third parties concerning the ownership of property if it is impossible to administer completely the estate of the bankrupt without determining the controversy. *O'Dell, supra; Luther, supra; Burton, supra.* In regard to the instant controversy, it would have been possible to administer the debtor's estate without the

Court's assumption of jurisdiction. The Trustee acknowledges that the ultimate decision of the controversy between the banks would not adversely affect the reorganization. Depending upon who prevailed, the claims against the debtor's estate would be reduced as to that particular creditor. This cannot be said to affect the administration of the estate. Rather, it involves a simple bookkeeping entry to be made by the Trustee.

■ The questions for resolution in this controversy are predicated solely on interpretation and application of Oklahoma State law involving, exclusively, Oklahoma banks. The ultimate legal issues relate to the status of Guthrie as holder of the certificates and the rights which it acquired. The State courts are best qualified to rule on these matters. We hold that an assumption of jurisdiction under these circumstances by a court of bankruptcy is improper. Bankruptcy courts should be reluctant to entertain questions which may be equally well resolved elsewhere. *See Rees v. Jensen,* 170 F.2d at 351 (9th Cir. 1948) n.2 and cases cited therein.

■ We are cognizant that the parties agreed to submit the subject controversy for disposition by the Bankruptcy Court, notwithstanding the prior challenges raised to its jurisdiction. Parties cannot confer subject matter jurisdiction upon a federal court by agreement, waiver or consent. *In re Martinez,* 241 F.2d 345 (10th Cir. 1957); *Nixon v. Michaels,* 38 F.2d 420 (8th Cir. 1930).

We reverse.