**In re LUCASA INTERNATIONAL LTD., Debtor.**

**Harold YOUNG, as Trustee in Bankruptcy of Lucasa International Ltd., Plaintiff,**

**v.**

**SULTAN LTD., Defendant.**

**SULTAN LTD., Third–Party Plaintiff,**

**v.**

**Anthony F. CUTAIA, Third–Party Defendant.**

**Bankruptcy No. 79–B–10062.**

**Adv. Proc. No. 80–5009–A.**

United States Bankruptcy Court, S. D. New York.

Oct. 30, 1980.

Ballon, Stoll & Itzler, New York City, for Anthony Cutaia, third party defendant by Mark Brandoff, New York City, of counsel.

Feder, Kaszovitz & Weber, New York City, for Sultan, Ltd.; by Toby Macy Schaffer, New York City, of counsel.

Horvath & Young, New York City, for Trustee in Lucasa Intern. Ltd.

OPINION

ROY BABITT, Bankruptcy Judge:

On October 17, 1979, an involuntary petition in bankruptcy was filed against Lucasa International Ltd. (Lucasa) under Section 303(a) of Chapter 3 of the Bankruptcy Reform Act of 1978 (Code).[1] Thereafter, on November 13, 1979, an order for relief was entered pursuant to Section 303(h), and Harold Young became trustee. Sections 701 and 702.[2]

---

1. The 1978 statute, Pub.L. 95–598, 92 Stat. 2549 *et seq.*, was enacted on November 6, 1978 and took effect on October 1, 1979 pursuant to Section 402(a) of its Title IV provisions, and became the only operative bankruptcy statute for petitions filed on and after its effective date. The sections of the Code "may (also) be cited as 11 U.S.C. § ___". (The word in parenthesis has been added for clarity).

2. In this district, one of the United States Trustee pilot districts prescribed by Section 1501, that official appoints the interim trustee, and, as here, the trustee. Section 15703.

Pursuant to his grant of power under the Code to collect and reduce to money property of the estate, Section 704(1), the trustee commenced an adversary proceeding pursuant to Part VII of the Bankruptcy Rules by filing a complaint. He cited Sultan Ltd. (Sultan) as defendant. Rule 703, 411 U.S. 1069, 93 S.Ct. 3147, 37 L.Ed.2d lxvi.[3] In this action the trustee seeks to recover the sum of $48,552.31 alleging that that sum constitutes a payment denounced as a preference by Section 547(b).

Sultan filed an answer denying the allegations of the complaint. Additionally, an affirmative defense raised the existence of a valid security interest in satisfaction of which the payments said to be preferential were made.

Within a few days of filing its answer, Sultan commenced a third party action against Anthony Cutaia pursuant to Bankruptcy Rule 714, 411 U.S. 1075, by serving him with a third party complaint. Rule 714 makes applicable Rule 14 of the Federal Rules of Civil Procedure which, in relevant part provides as follows:

"(a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third–party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third–party plaintiff need not obtain leave to make the service if he files the third–party complaint not later than 10 days after he serves his original answer."

There, Sultan alleges that if it is held liable to the bankruptcy trustee, Cutaia would, in turn, be liable to Sultan for the amount pursuant to the terms of an agreement of guarantee between Sultan and Cutaia entered into while the latter was a director, officer and shareholder of the debtor, Lucasa.

Cutaia interposed an answer containing several affirmative defenses, the first of which says that this court "has no jurisdiction over the third–party defendant". Subsequently, Cutaia moved to dismiss the third–party complaint, and in the affidavit in support of the motion insists that this court lacks jurisdiction because his status with Sultan is a matter involving strangers to Lucasa's bankruptcy and that resolution of their quarrel elsewhere will not affect the administration of Lucasa's estate.

Whatever merit such a defense might have had in the context of the circumscribed jurisdiction of the bankruptcy court under the now repealed 1898 Bankruptcy Act,[4] see e. g., *First State Bank and Trust Co. of Guthrie, Oklahoma v. Sand Springs State Bank of Sand Springs, Oklahoma*, 528 F.2d 350, 353 (10th Cir. 1976), it is clear that this court's power to act in this dispute is "found expressly" in the 1978 legislation, a source found necessary by the Tenth Circuit Court of Appeals if a bankruptcy court were faced with a dispute not involving property of the estate. 528 F.2d at 353.

The third–party defendant appears to acknowledge that the Lucasa bankruptcy is under the 1978 statute but seems to be of the view that no matter how that legislation treats the bankruptcy court's jurisdiction, the rule that such jurisdiction does not reach disputes between third parties remains the law. He concludes, therefore, that the third party complaint must be dismissed.

While the Senate and the House had differences in many aspects of the 1978 legislation, they were on common ground in their view that real bankruptcy reform required the abolition of the concept under the 1898 Act that a bankruptcy court's jurisdiction over certain kinds of disputes rested on possession of property of the estate, actual or constructive, or on consent. See, e. g., *Harrison v. Chamberlin*, 271 U.S. 191,

---

**3.** The 1973 bankruptcy rules of procedure are, in the main, applicable to petitions filed under the 1978 statute, unless inconsistent with the latter. Section 405(d) of the 1978 statute's Title IV. The Part VII Adversary Proceeding Rules are not inconsistent with the Code and therefore govern the procedure for suits within Rule 701, 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d lxvi, such as the instant action.

**4.** Section 401(a) of Title IV of the 1978 statute repeals that Act although it remains operative as to cases filed under it and still pending in bankruptcy courts. Section 403(a).

46 S.Ct. 467, 70 L.Ed. 897 (1926); *Cline v. Kaplan*, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Sahn v. Pagano*, 302 F.2d 629 (2d Cir. 1962), *cert. denied* 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962). Both chambers recognized the need

> "to enlarge the jurisdiction of the bankruptcy court in order to eliminate the serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction . . . ."

S.Rep. 95–989, 95th Cong., 2d Sess. 17 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5803. The views of the House are more trenchant. See H.Rep. 95–595, 95th Cong., 1st Sess. 43–48 (1977). The House summed up its perception of jurisdiction under the 1898 Act and the need for change in these words at 48, U.S.Code Cong. & Admin.News 1978 at 6009:

> "Today, the rationale for withholding jurisdiction from the bankruptcy courts no longer exists, and the problems generated by limited jurisdiction demand a change, in any comprehensive revision of the bankruptcy laws.
>
> The hearings before the Subcommittee on Civil and Constitutional Rights confirmed the findings of the Bankruptcy Commission relative to the problems created by the limited jurisdiction of the bankruptcy court. Witness after witness argued in favor of increased jurisdiction. The time for change in this aspect of bankruptcy law has come. It is essential to a healthy bankruptcy system."

Congress' mood cannot be plainer, and by whatever means used in the spirit of compromise, see 124 Cong. Rec.–House H11089 *et seq.*, (daily ed. September 28, 1978), and on the Senate side, S17406 *et seq.*, (daily ed. October 6, 1978), both chambers conferred

pervasive jurisdiction on the bankruptcy courts to determine all disputes arising in the unfolding of a petition under the 1978 statute.

In new 28 U.S.C. § 1471(c), achieved by Section 241 of the 1978 statute's Title II amendments, the bankruptcy courts are given all the jurisdiction conferred on district courts by Sections 1471(a) and (b). That includes, under Section 1471(b), jurisdiction of

> "all civil proceedings arising under title 11 or arising in or related to cases under title 11." [5]

Here, the trustee, acting upon the power given trustees by Section 547 of the Code to avoid preferential transfers and to recover the property thus transferred, has begun his action here to achieve that end, plainly a civil proceeding arising under or in the case for which he stands as trustee. It follows, therefore, that the defendant's third–party suit against Cutaia, defendant's guarantor, is also a civil proceeding arising in and related to the Lucasa bankruptcy. Manifestly, therefore, this court has jurisdiction for all of this is within the pervasive jurisdiction given bankruptcy courts by new 28 U.S.C. § 1471(b) read with subsection (c).

But to acknowledge that the bankruptcy court has jurisdiction is not at one with its exercise for, even in the face of the bankruptcy court's undoubted jurisdiction under the 1898 Act, the Supreme Court held in *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), that that court could

> "consent to submission to state courts of particular controversies involving unsettled questions of state property law . . . ."

*Id.* at 483, 60 S.Ct. at 630.

So, too, was the Tenth Circuit Court of Appeals in *The First State Bank and Trust*

---

**5.** In the context of the jurisdictional grants given by the 1978 statute, the word "case" refers to the commencement of a bankruptcy by the filing of a petition by a debtor under Sections 301–303. It is a word of art embracing only the filing of a petition and the attachment, therefrom, of the bankruptcy court's jurisdiction to administer the case under Section 1471(a), and, under Section 1471(c), all civil proceedings therein. See H.Rep. 95–595, 95th Cong., 1st Sess. 445 (1977). This distinction is drawn clearly in the extensive venue sections dealing with the bankruptcy court in which the petition by or against a debtor is filed, 28 U.S.C. § 1472, and the bankruptcy court in which a proceeding arising under or related to a case is to be started, 28 U.S.C. § 1473. See H.Rep. 95–595, *supra*, at 446–447.

*Co. of Guthrie, Oklahoma, supra,* led to observe that while the bankruptcy court under the 1898 Act had jurisdiction over disputes between third parties if it were impossible to completely administer the estate without resolving the dispute, it should not have assumed jurisdiction on the facts there shown.

New 28 U.S.C. § 1471(d) provides for abstention by the bankruptcy court "from hearing a particular proceeding" arising under or related to a case under the 1978 Code, and thus acknowledges the teaching of *Thompson v. Magnolia Petroleum Co., supra.* See H.Rep. 95–595, *supra,* at 446.

It follows, therefore, that if Cutaia is to prevail on this motion to dismiss the third–party suit it is not because this court is bereft of jurisdiction for new 28 U.S.C. § 1471(b) read with Section 1471(c) leads to the opposite conclusion. And for the reasons which follow, Cutaia's motion must be denied even if it were read as a request that this court abstain under Section 1471(d).

As the decision to abstain or not to abstain is made unreviewable by appeal or otherwise by that section, this court, in essence, becomes infallible because it is final. For that reason, something should be said so that Cutaia is not left with the feeling that he has been ambushed by the defendant in this forum.

At the outset, Rule 14, F.R.Civ.P., made applicable here by Bankruptcy Rule 714, 411 U.S. 1075, is appropriate because of the potential liability to Sultan if Lucasa's trustee prevails in his suit. Rule 14 fosters judicial economy and simplifies procedures for it is a tool which allows two actions to be tried together, thus saving time and cumulative expense.

> "The general purpose of Rule 14 is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third–party defendant."

3 Moore's *Federal Practice,* ¶ 14.04 (2d ed. 1979).

Sultan's third–party suit to recover from Cutaia under an agreement of guarantee presents a classic case for impleader. By that suit, Sultan seeks to recover under a guarantee that Cutaia would pay any "existing and future" indebtedness of Lucasa to Sultan. If the trustee prevails against Sultan, then Cutaia might well be liable.

If this third–party action were dismissed or the court were to abstain, Sultan would be compelled to await the outcome of the trustee's suit here, and then institute a separate action elsewhere. The time lapse might convert Cutaia from a solvent to an insolvent guarantor. The court is satisfied that impleader is an appropriate and necessary tool in this action.

Further, the court does not feel that it should abstain under an application of *Thompson v. Magnolia Petroleum Co., supra,* for the dispute between Sultan and Cutaia does not involve issues of fact and law surrounding the basis for Cutaia's potential liability which are beyond this court's comprehension. Whether the alleged guarantee is valid under state law is a far cry from the "unsettled questions of state property law" which the Supreme Court felt called for deflection of jurisdiction in *Thompson.*

Finally, relevant provisions of the 1978 Bankruptcy Code place Cutaia squarely within the recognition of the Tenth Circuit Court of Appeals in *The First State Bank and Trust Co. of Guthrie, Oklahoma, supra,* at 353, that this court has (and should therefore assume) jurisdiction over a dispute between third parties if the trustee cannot administer the estate without resolution of that dispute.

In the scheme of the Code, Cutaia's position *vis–a–vis* the trustee is very much a part of the expected administration of the debtor's estate and the trustee's duty under Section 704(4) to examine filed claims and either object to improper ones or allow a

filed claim to share in the debtor's assets under Section 502(a).

This is so because Cutaia may file a claim against the estate based upon his potential liability to Sultan. Section 101(4) defines a claim as a right to payment,

"whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured."

This is part of the scheme of the 1978 Code to permit all legal obligations of the debtor to be dealt with in the administration of the estate. See S.Rep. 95–989, *supra*, at 21–22; H.Rep. 95–595, *supra*, at 309. It is also, from Cutaia's standpoint, a means whereby he may share in the debtor's assets by timely assertion of his claim under Section 726(a) of the Code.

However viewed, it is plain that unless Cutaia's position is fixed in Lucasa's bankruptcy, the trustee cannot properly discharge the duties placed on trustees by the Code. Cutaia is therefore very much an integral part of the Lucasa bankruptcy and of the trustee's suit against Sultan.

The motion by Cutaia, whether it is read as seeking dismissal for want of jurisdiction, or as a motion asking this court to abstain, is denied. It is so ordered.