In re Larry T. **BOTTLES**, Betty J. **Bottles**, Debtors.

**UNITED STATES of America, On Behalf of its agency FARMERS HOME ADMINISTRATION, Plaintiff,**

v.

**Larry T. BOTTLES, Betty J. Bottles, Robert Sullivan, Trustee, Defendant.**

Bankruptcy No. 381–01677.
Adv. No. 382–0024.

United States Bankruptcy Court,
C. D. Illinois.

June 16, 1982.

William J. Dueringer, Gibson City, Ill., for State Bank of Saybrook.

Larry A. Mackey, Asst. U. S. Atty., Springfield, Ill., for the U. S. on behalf of F.H.A.

## OPINION AND ORDER

BASIL H. COUTRAKON, Bankruptcy Judge.

The question in this case has been presented to the Court as to who is entitled to the proceeds from the sale of personal property: the holder of a perfected security interest in that property or the one who has no security interest but to whom the holder of the perfected security interest subordinated its claim.

The facts of the case which have been reviewed and accepted by the Court are substantially those presented in the United States Attorney's well-written Memorandum.

On March 21, 1980, Larry T. Bottles and Betty J. Bottles obtained an operating loan from the United States of America, acting through the Farmers Home Administration, in the amount of $22,000.00. As an incident to this loan, the Farmers Home Administration secured a Security Agreement dated March 21, 1980, which both Mr. and Mrs. Bottles executed. The security agreement covered all farm equipment and livestock owned or thereafter acquired by the Bottles. The Government's security interest in the farm equipment and livestock was perfected by a Financing Statement, filed in McLean County on March 24, 1980.

On December 24, 1980 the United States agreed to subordinate its lien on the Bottles' hogs to the State Bank of Saybrook. The subordination agreement also referred to a commitment on the part of the State Bank of Saybrook to loan approximately $21,000.00 to the Bottles for 1980 operating expenses.

Following the date of execution of the subordination agreement, the next loan obtained by the Bottles was from the Farmers Home Administration in the amount of $8,000.00 on March 10, 1981. As an incident to the Promissory note for $8,000.00, both of the Bottles executed another security agreement on the same date.

In April, 1981 the State Bank of Saybrook loaned the Bottles monies on two occasions. On April 9, 1981, Larry Bottles signed a promissory note with the bank of $3,300.00. The promissory note on this date made no reference to any security interest or agreement. On April 22, 1981, Larry Bottles signed another promissory note with the State Bank of Saybrook for the amount of $22,115.22. This promissory note identified the subordination agreement from the Farmers Home Administration on December 24, 1980, as the security agreement for the loan.

On July 9, 1981, the State Bank of Saybrook extended an additional loan to Larry Bottles in the amount of $1,500.00. The loan makes no reference to any security agreement.

The State Bank of Saybrook did not obtain separate written security agreements from Larry Bottles individually or by the Bottles together in connection with any of the above-described loans from that bank. Moreover, no financing statement was prepared or filed on behalf of the Saybrook bank concerning the same set of loans.

On November 16, 1981 Larry and Betty Bottles filed a voluntary Chapter 7 petition for bankruptcy in this Court. Shortly after the petition was filed, the Trustee permitted the Government to take possession of and sell all of the debtors' hogs. Thereafter, the Farmers Home Administration arranged for the sale of Bottles' hogs on November 30, 1981, December 3, 1981, and January 7, 1982. As a result of the sales, $14,403.80 was received by the Government. The cost of maintaining the hogs and conducting the sales resulted in expenses totalling $1,523.32. The net income from the sale of the Bottles' hogs was $12,880.48.

On January 18, 1982, the Government filed a Petition for Abandonment of Personal Property in this cause. In that regard, the Government listed certain farm equipment which had served as additional security to the loans extended by the Farmers Home Administration.

Following the filing of the Petition for Abandonment, the State Bank of Saybrook, through counsel notified the Government that it was making full claim to all of the proceeds by virtue of the subordination agreement previously executed in December, 1980.

On April 15, 1982, this Court entered its order to the Trustee herein to abandon all interests in the personal property described by the Government in its Petition for Abandonment.

There appears to be very little law in this matter that the Court has found to be directly on point concerning subordination agreements. The Court itself would have liked to have heard arguments on the issue of estoppel and reliance. For example, might the Government be estopped from claiming a perfected security interest in the hogs when the State Bank of Saybrook might have relied on a subordination statement.

Here is a fertile and interesting field in which this Court would have liked to make law. Yet the legal arguments in this matter serve only to display a controversy that is essentially one between the bank and the Government, not the estate in bankruptcy. Hence the Court will consider subject mat-

ter jurisdiction on its own motion even though it was never specifically raised by the parties. *Guthrie v. Sand Springs State Bank,* 528 F.2d 350 (10th Cir. 1976), CCH 65,877.

The hogs were abandoned (Order of April 15, 1982) by the Trustee pursuant to Code Section 554 (11 U.S.C. § 554) so they are no longer part of the estate.

The Seventh Circuit has already answered the question of whether or not

a court of bankruptcy, in administering the bankruptcy law, (has) jurisdiction and power to determine a dispute between parties, concerning ownership of and title to property in which neither the debtor corporation nor its trustee has any interest. *In re Burton,* 126 F.2d 447 (7th Cir. 1942), CCH 53,635.

*Burton* held that a court in bankruptcy did not have that jurisdiction except when, as in *Burton,* the property was necessary for a reorganization.

The same logic was followed more recently in *Guthrie.* The Court noted it would retain jurisdiction if "it is impossible to completely administer the estate of the bankruptcy without determining the controversy." *Guthrie.* Of course this exception is inapplicable here as the property in question is no longer part of the estate.

I see nothing in the Bankruptcy Reform Act of 1978 (the Code) to change the reasoning of *Burton* or *Guthrie.* This Court's jurisdiction may have been expanded under the Code but 28 U.S.C. 1471(e) grants "exclusive jurisdiction of all the property ... of the debtor..." There is no such "property ... of the debtor" involved here now. See *In re Chong,* 12 B.R. 255 (1981) where the trustee and the estate were involved at the commencement of the action but were later dismissed, thereby causing jurisdiction on a damage suit to fall.

Similarly 28 U.S.C. 1471(b) & (c) confer on bankruptcy courts (through district courts) "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11."

The bankruptcy court in *In re Universal Profile, Inc.,* 6 BCD 919, 6 B.R. 190 (1980)

examined the legislative history of 28 U.S.C. 1471(b) with its three bases of jurisdiction: "arising under title 11," "arising in . . . cases under title 11," and "related to cases under title 11." Based on an analysis of that section a third party complaint by a wife to enforce a property settlement agreement, concerning the marital residence of the husband shareholder of a corporate debtor was dismissed. The wife brought a suit founded upon a property settlement *agreement* that required the application of state law. There was then no claim "under title 11." While the bankruptcy court saw a possibility that the complaint might be one "arising in or related to cases under title 11" it was only a "tenuous connection." Jurisdiction was thus denied because of a lack of a "reasonable nexus" suggested by 1 Collier ¶ 3.01, at 3–46 (15th ed. 1980). Id. at 921. The foundation of the instant case is also an agreement, a subordination agreement, not property of the estate.

In *In re Curtina International,* 15 B.R. 993 (1981) a plaintiff sought to attach property of the individual principals, allegedly alter egos, of the debtor. Yet the bankruptcy court denied jurisdiction as the plaintiff

> neither seeks to recover assets for the estate nor from the estate. The trustee in bankruptcy has no interest in any recovery that (the plaintiff) might obtain from the nondebtor defendants. Id. at 995.

Finally the Farmers Home Administration found itself in a similar situation in Alabama a year ago. The bankruptcy court found that it did not have jurisdiction to adjudicate a controversy between a plaintiff landlord and the secured creditor FHA who was holding proceeds of the sale of a debtor's crops.

> We think that controversy is so far removed from the administration of this estate and the rights of creditors generally that the Court cannot be said to have subject matter jurisdiction. *In re Lunsford,* 4 CBC 2d 1200, 12 B.R. 762 (1981).

This Court is thus in accord with a long line of old and new cases and with Collier's opinion that

Situations will undoubtedly arise in which the controversy is so tangential to the title 11 case that a court will hold that the case neither arises in nor is related to the title 11 case. In such cases, the bankruptcy court may decide that the exiguous nature of the relationship between the proceeding and the bankruptcy case is such as to fall without the court's jurisdiction. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have *any effect upon the estate being administered.* 1 Collier on Bankruptcy ¶ 3.01 (15th ed.) Emphasis supplied.

This Court does not see any way in which the administration of the estate would be affected or inconvenienced in the slightest by the adjudication of exclusively Illinois legal issues in the state courts best qualified to rule on them.

It is therefore ORDERED that the case be dismissed for lack of subject matter jurisdiction.