**J. Charles F. GILLE, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 90–C–468–E.**

United States District Court,
N.D. Oklahoma.

July 19, 1993.

Order Clarifying Decision Aug. 31, 1993.

**522**

J. Charles F. Gille, pro se.

Kathleen Bliss Adams, Phil Pinnell, U.S. Attys., Tulsa, OK, Gerald A. Role, U.S. Dept. of Justice Tax Div., Trial Atty., Washington, DC, for U.S.

### ORDER AND JUDGMENT

ELLISON, Chief Judge.

#### Findings of Fact

1. On May 31, 1983, Plaintiff J. Charles F. Gille and his wife Vicki L. Gille filed a joint 1982 tax return showing his address to be 632 S. 1000 W., Orem, Utah, 84057.

2. Plaintiff did not file a tax return, joint or otherwise, for the tax year 1983.

3. In September of 1984, Plaintiff and Vicki Gille filed a change of address form

---

**1.** Mrs. Gille was present at the trial and consented to the disclosures of her tax return informa-

with the United States Post Office notifying them of their move from Utah.

4. On January 7, 1985, the IRS issued and mailed a notice of balance past due relating to the deficiency for the tax year 1982. Although the IRS mailed that notice to the Orem, Utah address, the United States Post Office forwarded the notice to the Plaintiff and his wife, 6512 N. Missouri, Oklahoma City, Oklahoma, 73111–79284.

5. In January of 1985, the United States Post Office forwarded the Gille's mail, including the Notice of Deficiency for the tax year 1982, to their Oklahoma City address.

6. In March of 1985, Plaintiff and Vicki Gille moved to 2944 Lakeside Drive, Oklahoma City, Oklahoma. The plaintiff again filed a change of address form with the United States Post Office.

7. In April of 1985, Vicki Gille became employed at Macklanburg–Duncan Co. in Oklahoma City, Oklahoma. A bank account was soon thereafter opened in Vicki's name at Liberty National Bank & Trust in Oklahoma City, Oklahoma for the purpose of the direct deposit of her paychecks from Macklanburg–Duncan.

8. On May 25, 1985, Bruce F. McGuigan, acting under power of attorney for Vicki L. Gille, mailed to the IRS at its Ogden, Utah center, a cashier's check in the amount of $4,982.48 representing full payment of the deficiency reflected in the January 1985 notice of deficiency for the tax year 1982. The accompanying letter from Mr. McGuigan stated in pertinent part as follows [1]:

> I am the attorney for [Mrs. Gille]. She and her husband filed a joint return for the year, 1982. I understand there has been considerable correspondence between the Internal Revenue Service and her husband. She wishes to resolve this matter, personally, between her and the Internal Revenue Service.
>
> Enclosed is a Cashier's Check in the amount of $4,982.48, which is in payment of the $4,713.42 in tax, penalty and interest

tion for purposes of these proceedings.

reflected in your notice of January 25, 1985, [plus interest on the deficiency]....

Mrs. Gille does not wish to involve her husband in her efforts to resolve this matter, thus we will appreciate your directing all correspondence pertaining to this matter to me (enclosed is Power of Attorney, Form 2848)....

9. On July 1, 1985, Vicki Gille mailed a handwritten letter requesting a receipt for all of the monies she had paid to the IRS. The letter referred the IRS to "Vicki L. Rebeck (Gille)", identified her social security number, and requested the IRS mail the receipt for the monies collected to: "Vicki Lynn Rebeck (Gille) c/o 6512 N. Missouri, Oklahoma City, OK, 73111.

10. On August 14, 1985, the IRS issued and mailed a reply to "Vicki Lynn Rebeck" at her Oklahoma City address indicating that they were looking into her case and would respond more fully in sixty days. The letter stated in part:

If you have any questions about this letter, please write to us at the address shown on this letter. If you prefer you may call the IRS telephone number listed in you local directory. An employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

The address shown on the letter was "Department of the Treasury, Internal Revenue Service, Ogden, UT, 84201."

11. On October 14, 1985, the IRS issued and mailed a letter to Vicki Rebeck at her Oklahoma City address which made reference to Mr. Gille's taxpayer identification number as follows:

Enclosed is a record of your 1982 account (filed jointly under 443–50–7817). We hope this information is helpful.

If you have any questions, please write to us at the address shown on this letter....

12. The IRS recorded a change of address for Vicki Rebeck (Gille) in October of 1985. The IRS did not at this time record a change of address for Charles Gille.

13. In January of 1986, Vicki filed a "married but filing separate" tax return for the tax year 1985 which reflected the Gilles'

Oklahoma City address. The return did not reflect the name or social security number of her spouse, Charles F. Gille. The tax refund received by her for that year was deposited into her Liberty National Bank & Trust account.

14. On May 5, 1986, a notice of deficiency was mailed to Charles F. Gille at the Utah address. The notice was returned to the IRS as undeliverable.

15. On May 26, 1986, another notice of deficiency was mailed to Charles F. Gille at the Utah address. The notice was returned to the IRS as undeliverable. Specifically, the outside of the notice stated, "RETURN TO SENDER, NO FORWARDING ORDER ON FILE, UNABLE TO FORWARD." The change of address form filed in 1985 by the taxpayer had expired.

16. In December of 1986, the IRS mailed a Form 1040 to Vicki Gille at the Oklahoma City address. The Form 1040 had an address label affixed to it which reflected the Gille's Oklahoma City address. Vicki filed that form 1040 for the tax year 1986 in February of 1987. The return did not reflect either the name or social security number of her spouse Charles F. Gille.

17. In January of 1987, the IRS filed a "dummy" Form 1040 for the tax year 1983 using Charles F. Gille's name, but reflecting both Charles' and Vicki's social security numbers. The Orem, Utah address was filled in on that dummy form, in spite of the IRS's communications with Mrs. Gille and the IRS's knowledge of the couple's Oklahoma City address.

18. A tax deficiency for the tax year 1983 was assessed against plaintiff on March 23, 1987.

19. Revenue Officer Timothy Andrew Anderson was initially assigned to the J. Charles F. Gille file for investigation. Anderson was located in the Ogden, Utah branch of the Internal Revenue Service. At the time of commencing this investigation, Anderson was still in training and under supervision. All notices issued in reference to J. Charles F. Gille were sent from the

Ogden, Utah branch of the Department of Treasury, Internal Revenue Service.

20. In October of 1987, the IRS mailed a "preliminary letter" regarding the assessed tax liability for the year 1983 to Charles F. Gille at the Utah address. The letter was returned as undeliverable by the United States Post Office to the IRS in the same month.

21. On December 31, 1987, a "notice of deficiency" for Plaintiff's 1983 individual income tax liability was issued and mailed to plaintiff at the Orem, Utah address. In January of 1988, the notice was returned by the United States Post Office as undeliverable.

22. In February of 1988, Vicki filed her Form 1040 tax return "married but filing separate" using the IRS label which reflected the Oklahoma City address. The return did not reflect either the name or social security number of her spouse, Charles F. Gille.

23. In July of 1988, Revenue Officer Timothy Andrew Anderson ordered an "IRP" transcript using both Charles' and Vicki's social security numbers.

24. In August of 1988, the IRS mailed a "notice of assessment" to Charles F. Gille to the Utah address. The notice was returned as undeliverable by the United States Post Office to the IRS.

25. In September of 1988, the IRS mailed a "final notice" of assessment and intent to levy to Charles F. Gille to the Utah address. The notice was returned as undeliverable by the United States Post Office to the IRS.

26. In November of 1988, the IRS issued and mailed a notice of levy on Vicki's paychecks to Macklanburg–Duncan Company, a notice of levy on Vicki's accounts at Liberty Nation Bank & Trust, and a notice of federal tax lien in Utah.

27. In November of 1988, the United States Post Office returns as undeliverable the "Taxpayer Copy" of the notice of federal tax lien in Utah.

28. On January 25, 1989, Plaintiff J. Charles F. Gille moved to 1700 West Quantico Street, Broken Arrow, Oklahoma, 74011. Plaintiff filed a change of address form with the United States Post Office.

29. On January 27, 1989, the IRS issued and mailed the following items to the stated entities: a notice of levy to the Burroughs Corporation, a notice of levy to Lytron Systems, a notice of levy to Burroughs Employee's Credit Union, a notice of levy to American Savings Association, a notice of levy to Utah Technical College, a notice of levy to Universal Campus Credit Union, and a notice of lien to the County Clerk in Tulsa County.

30. On March 24, 1989, Revenue Officer Tim Anderson mailed a postal tracer to the United States Post Office in Orem, Utah reflecting the Gille's Utah address. The tracer was returned to the IRS by the United States Post Office reflecting that John Charles Gille was "not known at address given."

31. On April 4, 1989, Revenue Officer Tim Anderson visited the current resident at 632 S. 1000 W., Orem, Utah, to investigate as to the current location of Charles F. Gille.

32. On April 4, 1989, Revenue Officer Tim Anderson visited the current resident at 630 S. 1000 W., Orem, Utah, to investigate into the current location of Charles F. Gille.

33. On April 4, 1989, Revenue Officer Tim Anderson mailed a postal tracer to the United States Post Office in Oklahoma City, Oklahoma, reflecting the Oklahoma City address. The postal tracer was returned to the IRS by the United States Post Office with the Broken Arrow address on it.

34. On April 14, 1989, Revenue Officer Tim Anderson mailed a postal tracer to the United States Post Office at Broken Arrow. The tracer was returned by the United States Post Office stating "mail is delivered to the address given."

35. In a letter to the IRS dated June 2, 1989, Charles F. Gille indicated that he never actually received any of the notices of deficiency and requested a variety of information pursuant to the Freedom of Information Act. This letter is referred to by the IRS as a "protest letter".

36. On June 12, 1989, Charles F. Gille's "protest letter" is received by the IRS, and specifically by Revenue Officer Tim Anderson.

37. On October 5, 1989, Revenue Officer Victor Christian made a field call to the Broken Arrow address and saw the following vehicles in the driveway—a van, a pontiac wagon and a boat. Revenue Officer Christian recorded the tag numbers on each of the vehicles. The next day the Revenue Officer called the Oklahoma Department of Motor Vehicles and the County Courthouse and determined that none of the assets were in Charles Gille's name.

### Conclusions of Law

1. Plaintiff contends that the agents of the IRS knowingly made unauthorized disclosures of Plaintiff's return information by virtue of the fact that the assessment made against Plaintiff was procedurally invalid. Plaintiff asks for monetary relief as a result of these alleged wrongful disclosures.

2. Three issues have been presented for determination: (1) whether this court has jurisdiction over the subject of this action,[2] (2) whether the notice requirements set forth at Title 26, United States Code, Section 6303 were followed such that the IRS exercised reasonable diligence in attempting to determine Plaintiff's correct address where express "clear and concise" notice of a change of address was not given directly by the Plaintiff to the IRS, and (3) whether disclosures of Plaintiff's tax return information were made in violation of 26 U.S.C. § 6103.

3. With respect to the first of the three issues, we begin by noting that a party may raise subject matter jurisdiction as an issue at any stage of the proceedings by the parties. *First State Bank & Trust Co. of Guthrie, Oklahoma v. Sand Springs State Bank of Sand Springs, Oklahoma,* 528 F.2d 350 (10th Cir.1976). In this case, the issue was first raised post-trial by the government. Specifically, the government asserts herein that Mr. Gille cannot challenge the procedural validity of the assessment until after he has paid the deficiency and brings a refund suit under Title 26, United States Code, Section 7422(a). The government relies in particular on a line of cases which have held that

when the taxpayer challenges the merits of a tax assessment (including challenges to notice and demand), rather than merely challenging the procedural regularity of the tax lien and the procedures used to enforce the lien, then sovereign immunity is not waived under § 2410 (action to quiet title) and a district court does not have jurisdiction over an action to quiet title until the taxpayer has paid the taxes in dispute and seeks refund pursuant to § 7422(a). *See Schmidt v. King,* 913 F.2d 837 (10th Cir.1990) (holding that the taxpayer's action characterized as one to quiet title actually challenged the deficiency assessment, and specifically the notice and demand given, and thus the district court lacked jurisdiction over the action until after the taxpayer had paid the taxes in dispute). *Egbert v. U.S.,* 752 F.Supp. 1010, 1014 (D.Wyo.1990) ("when taxpayers contest assessment and notice and demand procedures they are actually challenging the adjudication of whether they owe taxes"), *aff'd,* 940 F.2d 1539 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 666, 116 L.Ed.2d 756 (1991). This is not a quiet title action under 28 U.S.C. § 2410. The government's reliance on this line of cases appears to be misplaced in that this action is not one to quiet title and therefore does not challenge whether the taxes are due and owing. Rather Plaintiff here merely seeks recovery for alleged unauthorized disclosures on the grounds that the notices of deficiency were procedurally invalid.

4. The next issue for resolution is whether notice pursuant to Title 26, United States Code, Section 6303(a) was given. The IRS is required by § 6212 to send a notice of deficiency to the taxpayer at his/her "last known address" to satisfy the notice requirement. The term "last known address" is not defined in the statutes or the regulations, but instead has come to be defined by a substantial body of case law. The term has been defined to mean " 'that address to which the IRS reasonably believes the taxpayer wishes the notice sent.' " *Cyclone Drilling, Inc. v. Kelley,* 769 F.2d 662, 664 (10th Cir.1985)

---

2. Although the parties agreed in the agreed pretrial order that this court had subject matter jurisdiction over this action, defendant has raised

this issue in it's proposed findings of fact and conclusions of law, which was submitted as a post-trial brief.

(quoting *United States v. Ahrens,* 530 F.2d 781, 785 (8th Cir.1976); *Sorrentino v. Ross,* 425 F.2d 213, 215 (5th Cir.1970); *Delman v. Comm'r of Internal Revenue,* 384 F.2d 929, 932 (3d Cir.1967), *cert. denied,* 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1144 (1968)). As explained by the Tenth Circuit in *Cyclone Drilling:*

> ... In recognition of obvious nationwide administrative realities, the burden is on the taxpayer to provide "clear and concise" notice of his current address to the IRS; the IRS is otherwise entitled to rely on the address shown on the taxpayer's tax return for the year in question. "Clear and concise" notice is notice by which the taxpayer indicates to the IRS that he wishes the new address to *replace* all old addresses in subsequent communication. Such an indication of replacement may be either explicit or implicit....
>
> In general, "[t]he relevant inquiry pertains to the IRS's knowledge rather than to what may in fact be the taxpayer's current address in use."
>
> The IRS is, however, required to use "reasonable diligence" in attempting to ascertain the taxpayer's correct address. The burden of proof is on the taxpayer to prove that this "reasonable diligence" was not exercised.

*Id.* at 664 (citations omitted).

5. Mr. Gille contends that the facts warrant a finding that the IRS failed to exercise reasonable diligence in that they had located his wife, with whom his last return was filed, at their Oklahoma City address, and yet they sent all the notices to the Utah address. The IRS maintains that "administrative realities" preclude them from having to cross-reference between the husband and wife. We cannot agree.

6. It is true that the Tenth Circuit Court of Appeals has held that cross-referencing addresses between business-related return information and individual return information amounts to an "unreasonable administrative burden." *Howell v. U.S.,* 982 F.2d 528 (10th Cir.1992) relying on *Stein v. Comm'r,* 60 T.C.M. (CCH) 211, 216, 1990 WL 102394 (1990) (recognizing unreasonable administrative burden of cross referencing individual taxpayer accounts with business accounts, and noting that "[t]axpayers can, and more often than not do, have different addresses for their residence and their business") and relying on *Lueck v. Comm'r,* 60 T.C.M. (CCH) 27, 30–31, 1990 WL 90950 (1990) (recognizing that IRS maintains business and individual tax records separately); and *Guillen v. Barnes,* 819 F.2d 975 (10th Cir.1987) (refusing to impute knowledge of an address change to the division of the IRS that issued the deficiency notices, based on information received in another IRS division, from a W–4 form, that was not identified as new permanent address information). However, the cross-referencing required of the IRS in this case amounted to no more than identifying Mrs. Gille's social security number which was located in the file for Mr. Gille on the "dummy" joint return. Once Mrs. Gille's name was identified to be Vicki Rebeck, the IRS needed only refer to her file to identify the Oklahoma City address. A direct letter from Mrs. Gille was mailed identifying their Oklahoma City address. The fact that the IRS sent a letter to Mrs. Gille at the Oklahoma City address in late 1985, cross-referencing her husband's social security number, illustrates the administrative ease with which the IRS could have mailed the notices to the Oklahoma City address.

7. Although the court does not in any way advocate the failure of any taxpayer to file tax returns, this court cannot find from the evidence presented that the IRS exercised reasonable diligence in attempting to ascertain Mr. Gille's correct address for purposes of satisfying the notification requirements of Title 26, United States Code, Section 6212.

■ 8. The final issue for determination by this court is whether any disclosures were made in violation of Title 26, United States Code, Section 6103(a), which generally prohibits disclosure of tax return information by federal employees, except for the specific reasons enumerated by the statute. Section 6103 does permit disclosure of return information for the purposes of tax administration, as provided in subsection (k)(6):

An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary ... with respect to enforcement of any other provision of this title.

Recovery for wrongful disclosure under § 6103 requires a preliminary finding that the government knowingly or negligently failed to comply with required procedures prior to recording liens or levies, thereby rendering public communication relating to tax return information a negligent or wrongful disclosure.

9. As discussed above, the failure of the IRS to exercise reasonable diligence in attempting to ascertain Mr. Gille's correct address amounts to a negligent failure to comply with the required notification procedures. Accordingly, the collection activities were not authorized, and any disclosures of return information were in violation of § 6103.

■ 10. We next turn to Title 26, United States Code, Section 7431 to determine the amount of damages to which Plaintiff is entitled for the unauthorized disclosures. Subsection (c) entitles plaintiff to the following:

(a) ... In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

(1) the greater of—

(A) $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, or

(B) the sum of—

(i) the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus

(ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

(2) the costs of the action.

Plaintiff put on no proof of any actual damages sustained, and the evidence does not warrant a finding of willfulness or gross negligence so as to justify an award of punitive damages. Plaintiff is therefore entitled to $1,000 for each unauthorized disclosure that occurred.

■ 11. The government contends that any unauthorized disclosures fall within the "good faith but erroneous interpretation of § 6103" defense, available by virtue of Title 26, United States Code, Section 7431, subsection (b), and they therefore are protected from civil liability in this case. This court cannot find from the evidence presented that the IRS agent acted in good faith where, as here, the IRS agent failed to attempt to identify the taxpayer's Oklahoma City address by referring to Mrs. Gille's social security number which was located on the dummy form filed by the IRS on behalf of the taxpayer and his wife. Furthermore, the fact that the IRS corresponded with the taxpayer's wife at their Oklahoma City address during the period in question suggests that the agent was not acting in good faith in attempting to determine the taxpayer's correct address.

12. All that remains is to determine the exact number of unauthorized disclosures of "return information" which occurred. "Return information" is defined in Title 26, United States Code, Section 6103(b)(2) as follows:

(A) a taxpayer's identity, the mature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence or possible existence of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b))

which is not open to public inspection under section 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer....

The court finds from the evidence that the following disclosures of "return information" were unauthorized and were not made in "good faith":

a. On or about November 7, 1988, Revenue Officer Tim Anderson issued and mailed a notice of levy to Macklanburg–Duncan Company.

b. On or about November 7, 1988, Revenue Officer Tim Anderson mailed notices of levy to Liberty National Bank.

c. On November 21, 1988, a notice of federal tax lien was filed in Utah County, Utah against Plaintiff at the Orem address.

d. On or about January 17, 1989, Revenue Officer Tim Anderson mailed a notice of levy to Burroughs Corporation.

e. On or about January 17, 1989, Revenue Officer Tim Anderson mailed a notice of levy to Lytron Systems.

f. On or about January 17, 1989, Revenue Officer Tim Anderson mailed a notice of levy to Burroughs Employees Credit Union.

g. On or about January 17, 1989, Revenue Officer Tim Anderson mailed a notice of levy to American Savings Association.

h. On or about January 17, 1989, Revenue Officer Tim Anderson mailed a notice of levy to Utah Technical College.

i. On or about January 17, 1989, Revenue Officer Tim Anderson mailed a notice of levy to Universal Campus Credit Union.

j. On March 2, 1989, Revenue Officer Tim Anderson disclosed taxpayer's name and other "return information", as that term is defined in 26 U.S.C. § 6103(b)(2) to "Jerry" at Unisys.

k. On April 4, 1989, Revenue Officer Tim Anderson visited the current residents at 632 S. 1000 W., Orem, Utah, and disclosed "return information" as that term is defined in 26 U.S.C. § 6103(b)(2).

l. On April 4, 1989, Revenue Officer Tim Anderson visited the current resident at 630 S. 1000 W., Orem, Utah, and disclosed "return information" as that term is defined in 26 U.S.C. § 6103(b)(2).

m. On September 18, 1989, Revenue Officer Victor Christian filed a notice of lien against Plaintiff in Tulsa County, Oklahoma.

The government is therefore liable to the Plaintiff for each of these 13 unauthorized disclosures.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of the Plaintiff and against the Defendant in the amount of $13,000.00 plus the costs of this action.

### ORDER and JUDGMENT

COMES NOW BEFORE THE COURT FOR CONSIDERATION the motion of Plaintiff for clarification of this Court's order captioned "Findings of Fact and Conclusions of Law" entered in July of 1993. The Plaintiff points out that, after finding that three separate postal tracers, each containing the taxpayer's name and the Internal Revenue Service address, were mailed and returned,[1] the Court thereafter failed to address whether such action on behalf of an agent of the IRS amounted to a "disclosure" of "return information" as those terms are defined by 26 U.S.C. § 6103. This Court's July order fully addressed the wrongful nature of the disclosure's made in this case, this order will therefore only address whether the plaintiff's recovery includes recovery for the mailing of the postal tracers.

The specific issue is whether the information disclosed on the postal tracer forms qualifies as "return information" for purposes of the liability imposed by sections 7431 and 6103 of Title 26 of the United States Code. Subsection (b)(2) of section 6103 defines "return information" to include:

---

1. The Court found that the first tracer was mailed on March 24, 1989, the second tracer was mailed on April 4, 1989, and the third tracer was mailed on April 14, 1989.

(A) a taxpayer's identity; the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments; whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing; or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination ... which is not open to public inspection under 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

The Defendant herein argues, in response to Mr. Gille's motion for clarification, that under this Court's ruling any attempt by the IRS to locate a taxpayer who has not filed a return for a significant period of time will "run afoul" of section 6103.[2] The Court is not sympathetic to this argument.

The point of section 6103 is to prohibit unreasonable violations of a taxpayer's privacy interests.[3] Accordingly, when the IRS is found to have been negligent in its collection efforts such that wrongful disclosures are made, the IRS is subject to liability. Once the court determines that the nature of the disclosures were wrongful (e.g. unauthorized and negligent), the scope of liability is broad under section 6103.

Accordingly, the court must find that a wrongful disclosure of "return information"

includes a wrongful disclosure of a taxpayer's name on a postal tracer which also identifies the IRS as being the party looking for the taxpayer. Therefore, the Court must find that the IRS is additionally liable to the Plaintiff for the three additional wrongful disclosures made in violation of sections 7431 and 6103.

IT IS THEREFORE ORDERED that Plaintiff's motion to clarify is hereby granted, AND this order and judgment shall supplement the court's order entered in July of 1993.

IT IS ORDERED, ADJUDGED AND DECREED that judgment is further entered in favor of the Plaintiff and against the Defendant in the amount of $3,000.00.

---

2. The court notes, however, that no legal authority was provided to support Defendant's position.

3. It is clear from the legislative history surrounding the enactment of sections 7431 and 6103 that Congress intended to balance the taxpayer's reasonable expectation of privacy against the legitimate need of the Government to use information gathered by the IRS for other purposes. At the same time, Congress clearly did not intend to impede the ability of the IRS to collect tax liabilities. *See* Staff of Joint Comm.Int.Rev.Tax, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, at 314–15, 1976–3 C.B. Vol. 2) 326–27.