**In the Matter of**
**BURSTEIN–APPLEBEE**
**COMPANY, Debtor.**

**POLYGRAM DISTRIBUTION, INC., Columbia Records (CBS), Panasonic Company, Division of Matsushita Electric Corporation of America, Warner-Elektra-Atlantic Corporation, Chicago Branch and GC Electronics, Inc., Plaintiffs,**

v.

**B–A SYSTEMS, INC., Pam Sander, Allen E. Fishman, Harold Kopitsky and Barry M. Kash, Defendants.**

No. 80–00968–3.
Adv. No. 85–0052–3.

United States Bankruptcy Court
W.D. Missouri, W.D.

May 15, 1986.
As Amended June 24, 1986.

Hollis H. Hanover, Popham, Conway, Sweeny, Fremont & Bundschu, P.C., Kansas City, Mo., for plaintiff Warner-Elektra-Atlantic.

LeLand M. Shurin, Horwitz & Shurin, P.C., Kansas City, Mo., for B–A Systems and Harold Kopitsky.

Gene E. Voigts, Shook, Hardy & Bacon, Kansas City, Mo., for plaintiff Columbia Records (CBS).

W. Dennis Cross, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for plaintiff GC Electronics, Inc.

Robert R. Raymond, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for plaintiff Polygram Distribution, Inc.

John R. Cleary, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., Kansas City, Mo., for plaintiff Panasonic Co., Div. of Matsushita Corp. of America.

G. Spencer Miller, Miller & Dougherty, Kansas City, Mo., for Pam Sander and Allen E. Fishman.

Loren G. Rea, Rea & Russell, Kansas City, Mo., for Barry M. Kash.

Paul E. Berman, Michael R. Roser, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE OF PERMANENT INJUNCTION

DENNIS J. STEWART, Chief Judge.

The creditors' committee of the bankruptcy estate in this corporate liquidation proceeding seeks a permanent injunction against the defendants' prosecuting a state court civil action against them sounding in defamation and tortious interference with contractual relations.[1] The injunction is sought on the ground that the defendants' state court suit is based upon actions alleged to have taken place in the course of administering these title 11 proceedings and, if the suit is permitted to continue, it would have a chilling effect on communications between the creditors' committee and the trustee and his counsel—communications which are necessary to the prosecution of a state court action against the defendants based upon allegations that the defendants fraudulently transferred property of the estate to themselves and others prior to the filing of the within involuntary bankruptcy proceeding.[2] In a prior order rendered after notice and hearing, this court granted a temporary injunction, for the duration of estate administration, based upon a factual showing by the plaintiffs that the state court action would "embarrass" administration of the within estate within the meaning of *Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970). But in so doing, the court observed that the jurisdictional strictures currently placed on bankruptcy courts would not appear to permit the imposition of an injunction which would last longer than the period of administration. This appeared to be so even though only a permanent injunction could avoid the chilling effect on communications between the creditors' committee and the trustee and his counsel which the threat of resumption of the state court would have. The pertinent considerations were set out in that order as follows:

"The merits of this adversary action were formerly heard by this court on June 24, 1985, and the court's decision has been delayed because the court has been given pause over the potentially momentous character of the issues involved. The evidence which was adduced on the occasion of the former hearing

---

1. It appears from the record which has been presented in this court that allegations of antitrust violation have been dismissed by the state court.

2. The evidence which has been adduced in this court is, in reality, uncontradicted with respect to the knowledge of the creditors' committee members respecting the operative facts of the state court suit which the trustee has brought against the defendants.

was generally to the effect that the defendants, who are the former principals of and successor to the debtor corporation, have filed a state court action against the defendants, who are members of the creditors' committee in the within bankruptcy proceeding; that the state court action sounds in alleged antitrust violations in that the creditors' committee members, who are the former suppliers of the debtor corporation have refused to grant credit to or trade with the successor corporation and in defamation in that, in the course of their activities as creditors' committee members, the defendants have made statements which are libelous concerning the former principals of the debtor corporation and the defendant corporation; that the filing of this state court action has frustrated and delayed the administration of the within estate because the creditors' committee members fear to communicate information to the trustee and his attorney which is vital and necessary to the continued prosecution of a state court action against the former principals of the debtor corporation to recover assets of the debtor corporation which are allegedly fraudulently converted by those former principals; and that, therefore, the administration of the within estate has been brought to a standstill by the chilling effect of the state court action brought by the former principals of the debtor corporation. Under precedents having seeming application to the action at bar, the bankruptcy court is authorized to enjoin actions in other courts which are not brought against the debtor or the bankruptcy estate, but which nevertheless 'embarrass' the administration of a bankruptcy estate. In the action at bar, that authority may well be sufficient to warrant the issuance of a temporary injunction which would expire at the conclusion of administration of the estate. But, if the state court action may be resumed after the conclusion of administration of the estate, a temporary injunction may not sufficiently prevent embarrassment to the estate. For the members of the creditors' committee will still not be protected from lawsuits for actions which they may lawfully undertake in furtherance of estate administration. Their efforts are accordingly apt to be chilled so as wholly to frustrate estate administration.

"For the bankruptcy court to grant the permanent injunction which seems necessary to enable proper and unembarrassed estate administration to take place, however, would appear to affront the decision of the United States Supreme Court in *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982), prohibiting the bankruptcy court from terminating actions which arise under state law. This may be particularly so when any permanent injunction may in part be based on common law principles which accord privileges against suits such as those brought in state courts against these creditors' committee members.

"But, if the relief sought by the creditors' committee members is not available in the bankruptcy court, it may not be available elsewhere. If the bankruptcy court were to make a preliminary finding that this is not a 'core' proceeding within the meaning of § 157(b)(2), Title 28, United States Code, and submit the matter for decision of the district court on the basis of recommended findings of fact and conclusions of law, the district court, because of the pendency of the state court action, may be required in its discretion to abstain from adjudicating the matter under § 1334(c)(1), Title 28, United States Code. And it is the expense and risk of defending the state court action which the creditors' committee must be spared in this case if estate administration in this—or virtually any other—case is to be effective.

"The bankruptcy court, then, is the only forum in which the relief which is necessary to the administration of the estate is available. The rule of necessity seemingly requires that the omnibus subsection

of § 157(a)(1), Title 28, United States Code, be interpreted so as to include the bankruptcy court's traditional and inherent power to render injunctions in cases such as that at bar within the definition of 'core' proceedings. So interpreted, however, the statute appears to violate the rule of *Northern Pipeline Construction Company v. Marathon Pipe Line Company, supra.*

"The only conceivable basis for bankruptcy court jurisdiction to issue a permanent injunction, it seems, would be for it to employ the long-standing rule that a bankruptcy court may exercise its jurisdiction to resolve actions otherwise without its jurisdiction 'if it is impossible to administer completely the estate of the bankrupt without determining the controversy.' *First State Bank and Trust Company v. Sand Springs State Bank,* 528 F.2d 350, 353 (10th Cir.1976); *Matter of Paso Del Norte Oil Company,* 755 F.2d 421, 425 (5th Cir.1985). Employment of this principle under the circumstances of this action, however, as noted above, runs squarely into the rule of *Northern Pipeline Construction Company v. Marathon Pipe Line Company, supra,* prohibiting a non-article III court from determining actions which, as this one does, arise purely under state law. "Yet, the 'rule of necessity' above explicated has the greatest possible application to the action at bar, for the only court which can grant adequate relief is the bankruptcy court. If the bankruptcy court refers the action to the district court, abstention under § 1334(c)(1), *supra,* seems almost necessarily to result. And the state court will try the actions on their merits, including the substantive counts alleging interference with trade relations and libel, so that the administration of the within bankruptcy estate will remain stalled and chilled.

"So it appears to be the case at bar that the bankruptcy court must either rule the issue of permanent injunction or else there can be no prospect of the permanent injunction. Yet it seems clear, after hearing the evidence in that action, that,

if a permanent injunction is necessary to ensure the continued beneficial administration of the estate, the bankruptcy court should issue it. The actions of a trustee of a bankruptcy estate or a creditors' committee are ordinarily considered privileged when claims for damages are made under trade regulations or for defamation. These rules of privilege seem applicable with full force and according to their intended purpose in this action. It seems apparent from the evidence that, for members of the creditors' committee to recommence commercial relations with the debtors' successors in interest would appear to constitute a conflict of interest for entities having a duty to champion the interests of the estate against those with whom the defendants would have them, under pain of a civil damages award, do business. And, even if defamatory, the statements of a creditors' committee to each other or the trustee in bankruptcy concerning acts or omissions of the defendants which relate to the estate can only be regarded as privileged.

"It cannot be the intended effect of the new law which limits the jurisdiction of the bankruptcy court that that court cannot protect the estate and its administration by imposition of appropriate injunctive relief. The result of such an effect is made only too obvious by the facts of this action, in which the specter of having to defend a protracted and costly state court action has, at this point, effectively put an end to estate administration.

"This is especially so in this action, in which it is the members of the creditors' committee who have the factual detail at their command which the trustee and his lawyers need in order to prosecute the state court action which seems a necessary prerequisite to collection of the estate. Under similar circumstances, the federal appellate courts have ruled that:

'Upon the filing of the petition, all property in the possession of the debtor passed into the custody of the reor-

ganization court and became subject to its authority and control. In the exercise of its jurisdiction over the debtor's property, the court had the power to issue injunctions and all other writs necessary to protect the estate from interference and to ensure its orderly administration ... This ancillary jurisdiction of the reorganization court flows not only from express provisions of statute ... but from the inherent power of a court of equity to protect its control of a res in its custody.'" *Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970). And the apposite authorities all hold that, in situations such as those at bar, the bankruptcy court may grant a temporary injunction, effective throughout the duration of administration of the estate, to prevent 'embarrassment' or disruption of that administration. The court will therefore grant the temporary injunction.

## II

"The question remains as to whether a temporary injunction will be sufficient to prevent embarrassment to the administration of the bankruptcy estate. If the defendants may be expected to resume their suit after the completion of administration, it seems that frustration of estate administration may still be achieved through a kind of 'chilling' process whereby the members of the creditors' committee will, through fear of resumption of the state court action, still decline to impart their information to the trustee and his attorneys.

"But, in order for the bankruptcy court to issue a permanent injunction would, as noted above, be equivalent to bankruptcy court's determining an action arising purely under state law in direct violation of the rule of the Supreme Court decision in *Marathon, supra.* Further, in making such a determination, the bankruptcy court would need to apply state common law principles of privilege which would immunize the members of the with creditors' committee from such suits for damages as are currently pending against them in the state court. Accordingly, the only way it appears that such relief may effectively be granted against the embarrassment of estate administration is for the bankruptcy court to interpret its current jurisdictional statutes as conferring Article III powers upon it."

The plaintiff was accordingly granted an opportunity to supply the court with authority which would demonstrate a basis for the issuance of a permanent injunction. In response to the court's order, the plaintiffs presented logic and authority to the effect that (1) the bankruptcy court, by the rule of necessity, must grant the permanent injunction, even if it means determining an action which arises exclusively under state law, because the district court, by reason of the complex of abstention statutes, is unable to grant the injunction; (2) the bankruptcy court jurisdictional statute, under such circumstances, must be construed so as to require such a determination by the bankruptcy court; and (3) that, if the action determined arises under state law and thus, under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1985), involves the federal judicial power, then the "rule of necessity" nonetheless requires that the bankruptcy court issue this permanent injunction.

*The power of the district court and the bankruptcy court to issue injunctions with respect to proceedings in state courts*

The initial question which is posed by the issues is that which plaintiff refers by the nomenclature of the "rule of necessity," thereby adumbrating the contention that, if the bankruptcy court does not determine the issue of whether a permanent injunction should be issued, there is no court which can. In commencing its assay of this issue, this court must postulate that a preliminary issue exists as to whether the district court or the bankruptcy court may, under the currently applicable statutory scheme, enjoin proceedings in other courts.

The primary focus in determining this issue must be the anti-injunction statute, section 2283, Title 28, United States Code, which provides as follows:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Under the former Bankruptcy Act, which was in effect prior to the effective date of the Bankruptcy Reform Act, October 1, 1979, the "express authorization" by Congress for issuing injunctions in connection with bankruptcy proceedings was found in section 2(a)(15) of the Bankruptcy Act. That section provided as follows:

> "Courts of bankruptcy may ... [m]ake such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessarily for the enforcement of the provisions of this Act: *Provided, however, that an injunction to restrain a court may be issued by the judge only.*"

"Section 2283 of 28 U.S.C. (former section 379, Jud.Code section 265),[3] which prohibits issuance of an injunction by any court of the United States to stay proceedings in a state court expressly excepts cases where such injunction is 'expressly authorized by Act of Congress.' This exception clearly has reference to sections 2(a)(15) and 11(a) of the Act." 1 Collier on Bankruptcy ¶ 2.61, pp. 325, 326 (14th ed. 1956). With the advent of the Bankruptcy Reform Act, the effective date of which, as observed above, was October 1, 1979, the power of injunction was contained in section 105 of the Bankruptcy Code, which was said to be the successor statute to section 2(a)(15), and which provided as follows:

> "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

According to the available legislative history under that section,

> "Section 105 is derived from section 2(a)(15) of present law, with two changes. First, the limitation of the power of a bankruptcy judge (the power to enjoin a court being reserved to the district judge) is removed as inconsistent with the increased powers and jurisdiction of the new bankruptcy court. Second, the bankruptcy judge is prohibited from appointing a receiver in a case under title 11 under any circumstances. The bankruptcy code has ample provision for the appointment of a trustee when needed. Appointment of a receiver would simply circumvent the established procedures.
> "This section is also an authorization, as required under 28 U.S.C. section 2283, for a Court of the United States to stay the action of a state court."

During the transition period dating from October 1, 1979, to June 27, 1984, however, section 405(a)(1) of Public Law 95–598, prohibited the bankruptcy judge from enjoining any proceeding in another court, reserving the power to the district court.

At the same time, the Bankruptcy Reform Act effected an amendment to section 451, Title 28, United States Code, which defined "court of the United States" as employed in section 2283, *supra*, (the anti-injunction act) to include the bankruptcy judges within its definition.[4] That definition, however, was not to be effective until the transition period had ended and bankruptcy judges were appointed pursuant to the then-existing plan for a new and separate bankruptcy court which would exercise the jurisdiction over both core and related matters, as they later came to be called, described in the various subsections of section 1471, Title 28, United States

---

**3.** This former section contained a specific exception for any injunctions issued in bankruptcy proceedings. But it was amended in 1941 in favor of the more general language which it now contains and the "specific authority" for injunctions in bankruptcy was left to section 2(a)(15) of the former Bankruptcy Act.

**4.** Bankruptcy judges "appointed for 14 years" were included as "enumerated" courts, not Article III courts.

Code. That section, however, was declared unconstitutional in major part by the decision of the United States Supreme Court on June 28, 1982, in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Accordingly, in the Bankruptcy Amendments and Federal Judgeship Act of 1984, which was enacted to implement the decision in the *Marathon* case, *supra*, several important and pertinent changes in the provisions relating to the status and powers of the bankruptcy court were made.

The Bankruptcy Amendments and Federal Judgeship of 1984 removed the bankruptcy court from the courts enumerated in § 451, Title 28, United States Code, *supra*, as "courts of the United States." [5] Accordingly, the bankruptcy court was placed outside the prohibitions of the Anti-Injunction Act.[6] At the same time, section 105 of the Bankruptcy Code was amended to read as follows.

"(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be

interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation."

Thus, while the bankruptcy court is, by means of the letter of subsection (c), at least impliedly granted the option of exercising the powers described in the other subsections,[7] the powers of the district court are relegated to those described in title 28—in which, as observed above, the only precisely applicable provision is the Anti-Injunction statute.[8] New section 105, on the other hand, not only permits the bankruptcy court to exercise the powers described in it, but also refers to title 28 in which the bankruptcy court is no longer subject to the prohibitions of the Anti-Injunction statute. The provisions of the above quoted subsection (c) are specific to the effect that the bankruptcy judges are to be permitted to exercise the powers described in subsection (a), in addition to any powers granted it in Title 28 of the United States Code.[9] But the district court, on the other hand, is only permitted the exercise of authority conferred by Title 28.

The policy that prevents a district court from enjoining state court proceedings which are related to bankruptcy finds firm support in another premier provision of the new Bankruptcy Amendments and Federal Judgeship Act of 1984, section 1334(c)(2), Title 28, United States Code, the so-called "mandatory abstention" statute. Under its provisions, the "district court" is required

---

5. See section 451(a), Title 28, United States Code.

6. According to the plain letter of that Act, only "courts of the United States" are subject to its prohibitive terms. See also section 114 of P.L. 98–353, which repeals section 405(a), which prevented bankruptcy judges from issuing injunctions of a court during the transition period.

7. A close reading of the subsection shows that "any district judge or other officer or employee of a district court" must find specific authority for his exercise of power in title 28. Then, "bankruptcy judges" are mentioned in a second sentence which provides that they are not to be excluded from "its operation." "Its" appears to

be ambiguous. If it refers to the subsection (c), then it appears that bankruptcy judges, like the other mentioned district court officers, are restricted to Title 28 (in which case they are relevantly relieved from the prohibitions of the Anti-Injunction statute) for their authority. In such a case, section 105(a) would appear to benefit neither the district judges nor the bankruptcy judges. "Its," therefore, must have a broader reference than to subsection (c) solely and must refer to "authority or responsibilities conferred upon the court under this title."

8. See note 7, *supra*.

9. See note 7, *supra*.

to abstain from a case which is based upon a state court case:

"Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."

Under its provisions, it would seem that the district courts must permit a pending state court action to go to trial and abstain from any federal court action which would supersede or abort the state court action.[10] For, in most imaginable cases, the state court action and the suit to enjoin it would be based upon the same set of operative facts.[11] And, if any doubt should inhere in this proposition, the "permissive abstention" provisions of section 1334(c)(1), Title 28, United States Code, are available to a district judge to ensure that his decision to abstain will not be likely to be reversed on appeal. Accordingly, if there is any doubt in the applicability of section 1334(c)(2), *supra*,[12] it seems likely to be resolved in favor of abstention rather than by retention of jurisdiction.

### The "Rule of Necessity"

■ From the foregoing consideration, it appears that, unless the bankruptcy court exercises its jurisdiction in this case to issue a permanent injunction against the state court proceedings brought by the defendants, the state court actions will proceed to judgment. But the plaintiffs have, as observed above, presented sufficient evidence to warrant a finding that it will be impossible to administer the within bankruptcy estate unless a permanent injunction is granted. If the members of the creditors' committee must face the resumption of the state court actions after the cessation of estate administration, the evidence which has been somewhat completely adduced shows that they will not continue to disclose facts to the trustee and his attorney which are necessary to be disclosed if the trustee's suit for recovery of the assets of the estate is to have any chance of being successful. The "rule of necessity" has in the past been applied by courts of bankruptcy to give themselves jurisdiction of actions which would ordinarily be without the compass of their jurisdiction but which must be adjudicated in the bankruptcy court or else the administration of the bankruptcy estate would be "impossible."[13] In this action, however, the evi-

---

10. See note 7, *supra.*

11. The injunction proceeding itself seems to be "based upon a State law claim or State law cause of action related to a case under title 11" within the meaning of section 1334(c)(2).

12. See section 122(b) of P.L. 98–353 which pertinently provides that "Section 1334(c)(2) . . . shall not apply with respect to cases under Title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases." "The permissive abstention statute, section 1334(c)(1), Title 28, United States Code, applies, however, and it is difficult to believe that, in passing on the question of permissive abstention, the district court would not be swayed by the letter of section 1334(c)(2), *supra,* in deciding whether it might not be an abuse of discretion not to abstain.' . . ." *Matter of Brownsberger,* 61 B.R. 22 (Bkrtcy.W.D.Mo.1986).

13. A bankruptcy court may exercise its jurisdiction to resolve actions otherwise outside its jurisdiction "if it is impossible to administer completely the estate of the bankrupt without determining the controversy." *First State Bank and Trust Company v. Sand Springs State Bank,* 528 F.2d 350, 353 (10th Cir.1976). "Even if resolution of the controversy might have (avoided) a 'chilling effect' on the financing of the arrangement plan . . . or might reduce claims against the debtor's estate . . ., exercising jurisdiction over a collateral controversy is improper where it is 'possible' to administer the estate without resolving the controversy." *Matter of Paso Del*

dence is clear to the effect that the factual basis necessary for recovery of the assets of the estate *cannot* be developed if the members of the creditors committee—those who know the facts which relate to the trustee's state court suit—must face the possibility of suit from the defendants.

In respect of the rights sought to be enforced by the trustee in the state court action, moreover, it can only be said that they are of paramount importance in the context of the purposes of the bankruptcy laws themselves. If the officers of an estate can collect the assets of that estate only at the cost of personally defending actions which threaten their personal assets brought by those who would forestall collection through the stratagem of filing such suits,[14] then it seems that any significant and effective collection of bankruptcy estates must come to an end. And it is through the process of asset collection that, in the final analysis, the bankruptcy courts are able to assure the honesty of debtors.[15] Otherwise, bankruptcy becomes the monopoly of those who would abuse its available processes to escape their lawful debts, unjustly and without genuine necessity. As a means of giving a new economic life to those whose good faith efforts have been unavailing, the bankruptcy process would gradually but rapidly fall into desuetude, thus deleting from the lifeline of our constitution the engine which gave our political democracy its necessary economic impetus. For it is clear that if a citizen has the right to only one economic chance—if one significant economic failure means that he must spend the remainder of his existence in servitude, despite the fact that his industry and creativity might otherwise have bestowed benefits upon himself and society—then the predicate upon which our democratic institutions exist would stand in grave peril.

These great and overshadowing principles are recognized under the state law, under which a trustee in bankruptcy and the officers who are charged with the duty of collecting and administering a bankruptcy estate are granted a privilege in respect to libel and slander and the other wrongs which are charged by the defendants in their state court petition.[16] These privileges, according to the evidence, are available to the plaintiffs in this action, when any and all of the transgressions alleged in the state court action to have been committed by the plaintiffs are demonstrated to have taken place during the pendency of the underlying title 11 proceedings [17]; to have been accomplished in the course of the good faith carrying out of the duties of the officers of the estate [18]; and, in fact, to have been accomplished in order to *avoid* any failure to fulfill the responsibilities

*Norte Oil Company,* 755 F.2d 421, 425 (5th Cir. 1985).

**14.** See note 13, *supra.*

**15.** Ordinarily, when measures may easily be—and regularly are—taken to avoid collection of a nondischargeability decree, the one certain deterrent to abuse of the bankruptcy system is the unfailing collection of the debtor's unencumbered and nonexempt assets.

**16.** According to the allegations in the state court petition, the libel consisted of describing the contents of the pleadings in the state court suit and stating the fact that an investigation was being conducted. Such reports and pleadings by a receiver or trustee are themselves privileged. See 50 Am.Jur.2d *Libel and Slander* sec. 254, p. 773 (2d ed. 1970). When many of the debtor's creditors were members of the trade and might be reached by the trade publication to which these statements were allegedly made, such statements might be considered on the periphery of an estate officer's duties. See note 17, *infra.*

**17.** See note 16, *supra.* Cf. *Barr v. Matteo,* 360 U.S. 564, 574, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) ("It is not the title of the office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision.' ... we cannot say that it was not an appropriate exercise of the discretion.... to publish the press release here at issue in the circumstances.")

**18.** See notes 16 and 17, *supra.* As a member of the creditors' committee, one may be conceived of as having the duty to let other creditors know the status of the administration of the estate. Thus, the acts alleged to have been committed were within the duties of the plaintiffs.

which must necessarily devolve upon an officer of the estate.[19] Under such circumstances, it is, by the rule of necessity and a matter of clear and inescapable duty of the bankruptcy court, that the permanent injunction should be issued.

### Jurisdiction

Section 105 of the Bankruptcy Code, however, only confers certain powers on the bankruptcy court; it does not in itself purport to be a jurisdictional statute. "Section 105 merely grants the court the power to issue any order, process, or judgment" and its provisions are not "sources of jurisdiction." *In re Hall*, 30 B.R. 799, 801, n. 3 (M.D.Tenn.1983). The jurisdictional statute upon which bankruptcy court jurisdiction must necessarily depend is section 157(b)(2), Title 28, United States Code, which pertinently provides for bankruptcy court determination of "matters concerning the administration of the estate" (subsection (A)) and "other proceedings affecting the liquidation of assets of the estate" (subsection (O)). The generality of these terms have caused them to be labelled as "catch-all" provisions.[20] And actions which arise exclusively under state law which fall within the category of the catch-all provisions have been held to be "related" proceedings, with respect to which the bankruptcy court may not issue a final determination, but instead must refer to the district court after a hearing and on the basis of recommended findings of fact and conclusions of law. See, e.g., *In re Castlerock Properties*, 781 F.2d 159 (9th Cir.1986).[21]

Exercise of the power to issue injunctions to preserve and protect the property of the estate, however, has always been so closely identified with the bankruptcy court's duties that it has been said to involve its "inherent" jurisdiction, provided for not only by statute but also by the court's possession of the estate. See, e.g., *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir.1970).[22] In view of this close identification of the power and duty of the bankruptcy court with the estate, the bankruptcy court—particularly under the circumstances of this action—must construe the provisions of section 157(b)(2)(A) and (O), *supra*, as conferring jurisdiction on the bankruptcy court as a "core" matter. It is true that the bankruptcy court and the district court, under the current statutory scheme, both have possession of the bankruptcy estate.[23] But, as observed above, it is the bankruptcy court which has solely been delegated the power to enjoin proceedings in another court. This consideration, together with the above-mentioned "rule of necessity," require this court to construe the general "catch-all" statute as conferring "core" jurisdiction on the bankruptcy court to issue the permanent injunction which is sought by the plaintiffs. In so doing, the court must give due weight to the principle of construction which requires that a legislative enactment be considered and construed so as to carry out the purpose of the Act of which it is a part.[24] It is

---

**19.** See note 18, *supra*.

**20.** See *In re Castlerock Properties, infra*, in the text of this memorandum.

**21.** Although the *Castlerock* decision purports to apply to contract actions, its principles can safely be said to apply to all types of actions which arise under state law and are therefore not created by Congress.

**22.** See also the authorities cited and quoted at length in *Matter of Brown*, 26 B.R. 119, 120 (Bkrtcy.W.D.Mo.1983), and *Matter of Isis Foods, Inc.*, 26 B.R. 122, 123 (Bkrtcy.W.D.Mo.1983). But the inherent jurisdiction utilized in those cases has been replaced by statutory jurisdiction.

**23.** Section 1334(d), Title 28, United States Code, provides that "(t)he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate." And, under the relevant provisions of section 151 of the same title, "(i)n each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."

**24.** "(A) construction should be avoided which would make the statute applicable to cases not within the reason upon which the statute is based." 73 Am.Jur.2d section 157, p. 361 (2d ed. 1974).

clear from the facts and the law of this case that unless the statute is construed so as to confer this jurisdiction, then the purpose of the bankruptcy laws is soundly defeated.

### Constitutionality

It is plain that the Supreme Court of the United States has held that it is an unconstitutional conferring of the federal judicial power for Congress by statute to confer on a non-Article III court the jurisdiction to determine an action which arises under State law. "(W)hen Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created. No comparable justification exists, however, when the right being adjudicated is not of congressional creation." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 93, 102 S.Ct. 2858, 2882, 73 L.Ed.2d 598 (1982). There can be little doubt that the action resolved by the granting of this injunction is one arising under state law—one, in fact, which is currently pending in state court and as to which this court must apply the state law of privilege as the rule of decision in order to issue the injunction which is necessary to preserve the bankruptcy process. Under the historical circumstances which provide the background for this action, however, the rule of *Marathon, supra,* may as well provide a basis for concluding that the delegation of this power to the bankruptcy court confers constitutional status upon that court as it may provide a basis for holding the statute unconstitutional as applied in this case. It must be remembered that construing the statute as constitutionally conferring this jurisdiction and power seems necessary to the effectuation of the purpose of the national bankruptcy laws. Further, the ordinary presumption to be indulged by trial courts is that a statute is constitutional.[25] And, finally, Congress seems to have conferred these powers on the bankruptcy court with full knowledge of the risk of any miscalculation under the *Marathon* rule, *supra.*[26] When Congress knowingly grants any portion of the federal judicial power to a previously non-Article III court, the judicial decisions of higher courts clearly hold that the effect is to elevate the status of that court, and consequently its judges, to that constitutional level which the newly-conferred powers require. Thus,

> "(i)t has historically been held that the designation placed by Congress on a court as an Article III court or a non-Article III court is not controlling; the question is whether any of the federal judicial power is conferred upon the court in question. 'In determining the constitutional character of the Court of Claims and the Court of Customs and Patent Appeals ..., we may not disregard Congress' declaration that they were created under Article III ... (but) Congress may not by fiat overturn the constitutional decisions of this Court.' *Glidden Company v. Zdanok*, 370 U.S. 530, 541, 82 S.Ct. 1459, 1468, 8 L.Ed.2d 671 (1962). It has historically not been the status of the judges of a court which determines the status of that court; rather the converse is so—the status of the court determines that of its judges. 'If it were plain that these judges were invested upon confirmation with Article III tenure and compensation, it would be unnecessary for present purposes to consider the constitutional status of the Court of Claims and the Court of Customs and Patent Appeals

---

**25.** See *Matter of Richardson*, 52 B.R. 527, 537, n. 13 (Bkrtcy.W.D.Mo.1985).

**26.** See, e.g., the considerations set forth in *Matter of Richardson*, 52 B.R. 527, 536, n. 16 (Bkrtcy.W.D.Mo.1985).

... (but) the constitutional quality of tenure and compensation extended Judges Madden and Jackson at the time of their confirmation must be deemed to have depended upon the constitutional status of the courts to which they were primarily appointed.' Id. at 538, 540, 541, 82 S.Ct. at 1466, 1467, 1468. '(T)he District Court employed the wrong test for determining whether Congress had created an Article III court ... (that test) comes "dangerously close to saying that Article III courts are those with Article III judges ..." (and) all of the opinions filed in the Court's latest Article III case, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] ... agree that it is not what Congress says but what powers Congress vests in the adjudicatory body that counts.' *Kalaris v. Donovan*, 697 F.2d 376, 385 (D.C.Cir. 1983).

"In accordance with this guiding principle, it has in the past been held that a court initially created as a non-Article III court may 'mature' into an Article III court by reason of being assigned a portion of the federal judicial power. '(P)rior to 1953 the Court of Claims had all of the characteristics of an Article III court—jurisdiction over justiciable matters, issuance of final judgments, judges appointed by the President with consent of the Senate—save as to congressional reference matters ... Since that time the Article III jurisdiction of the court has been enlarged ... I see nothing in the argument that the 1953 and 1958 Acts so changed the character of these courts as to require newpresidential appointments. Congress was merely renouncing its power to terminate the functions or reduce the tenure or salary of the judges of the courts. Much more drastic changes have been made without reappointment.' Id. at 586, 82 S.Ct. at 1491, 1492, 1493. And if a court does mature in such a manner, it is clear that its judges become Article III judges, without the necessity of reappointment, regardless of the character of their initial appointment. *Id.* See also *Booth v. United States*, 291 U.S. 339, 54 S.Ct. 379, 78 L.Ed. 836 (1934)."

*Matter of Richardson*, 52 B.R. 527, 533, 534 (Bkrtcy.W.D.Mo.1985). It must be said at this point that this court has been extremely reluctant in its past decisions to assume any powers which would confuse its status with that of an Article III court. In the *Richardson* case, *supra*, itself, this court stated that "the bankruptcy court must be circumscript in interpreting the law delegating powers to it lest it be accused of arrogating Article III powers to itself." 52 B.R. at 533. See also *Matter of Naughton*, 44 B.R. 670 (Bkrtcy.W.D.Mo. 1984). There is no imaginable circumstance under which those of us who have long served in the ranks of the bankruptcy judiciary would attempt to utilize these principles to aggrandize ourselves with a status to which we cannot in reality pretend. In every conceivable way—as a matter of law and scholarship, and intellectually, socially, and morally—we regard and recognize the superiority and priority of the appellate and district judges over our comparatively small merits, and there is no way that we can or would seek to equate ourselves with them. But if the survival of the fundamental and necessary—albeit perhaps minor—link in our federal constitutional system depends upon the assertion of the principle that the bankruptcy court, through some means or other, is empowered to issue the judgment which it here must issue, then that assertion must necessarily be made. And, in this case, it seems that there can be no other basis for the bankruptcy court jurisdiction which must be exercised lest suits against officers of bankruptcy estates must be permitted to run their full course at enormous personal cost for those officers and to the bankruptcy system as well.[27]

---

**27.** The other possible alternative is the "inherent jurisdiction" formerly employed when bankruptcy court jurisdiction was no longer a creature of the statutes in the interim following the *Marathon* decision on June 28, 1982, and the effective date of the Bankruptcy Amendments

Nor is it correct to say that the plaintiff's argument proceeds from a basis that the bankruptcy court is not a "court of the United States"—and therefore outside the range of the Anti-Injunction statute—to a conclusion that the bankruptcy court is indeed an Article III court of the United States in every sense of the word. Even if subject to the Anti-Injunction statute, the bankruptcy court alone, as i.e. above explained, has the specific authorization contained in section 105(a) of the Bankruptcy Code to issue the injunction which should be issued in this case. And it is, further, axiomatic that the nomenclature placed on a court by Congress is not controlling. The meaningful criterion of its status is the type of power conferred on it. *Kalaris v. Donovan, supra.*

And in every respect except possibly one, the claim of the bankruptcy courts to a place in the constitutional sun is many times stronger than that of the administrative court in *Kalaris v. Donovan, supra.*[28] Bankruptcy courts are empowered to determine many types of actions which arise under state law[29]: they may issue subpoenas and they apply the rules of evidence[30]; and they have the power to enforce their own judgments.[31] The only weak point of comparison is that most bankruptcy judges now have definite 14-year terms of office, as opposed to the "indefinite" term enjoyed by judges of the administrative court.[32] But the courts favor a construction which makes the major provisions of a statutory scheme constitutional; and it may accordingly be unconstitutional to restrict those who are otherwise required by statute to exercise the federal judicial power to a term less than good behavior.[33]

It must be reiterated in conclusion that this decision purports in no way to arrogate to bankruptcy judges any higher status in the federal judiciary than they now occupy, nor, indeed, to confer any change in status at all, but only to provide a jurisdictional basis for the injunctive relief which, it appears to this court, must be issued in this action.

*The request for additional time*

The defendants, in motions recently filed with this court, have requested that this determination be withheld until a settlement proposal with respect to the trustee's state court action and the defendants' state court action can be acted upon and approved or disapproved. But much of that decision will depend upon whether some or all of the members of the creditors' committee evince a desire to continue with

and Federal Judgeship Act of 1984, on July 10, 1984. But when jurisdiction is conferred by statute, as it now is, it is by definition the federal judicial power. See the authorities cited in *Matter of Transport Clearings-Midwest, Inc.,* 41 B.R. 528, 537, n. 18 (Bkrtcy.W.D.Mo.1984).

28. In addition to the differences mentioned in the text of this memorandum, the administrative court involved in that case was a legislative court of sorts, while the bankruptcy court is explicitly excluded by the *Marathon* decision from the legislative court category.

29. Perhaps the most plentiful example of this is claims against the bankruptcy estate themselves, which necessarily arise under state law. See the authorities and considerations set out in *Matter of Richardson,* 52 B.R. 527, 536, 537 (Bkrtcy.W.D.Mo.1985).

30. See Rules 9016 and 9017 of the Rules of Bankruptcy Procedure.

31. See Rules 7069 and 7070 of the Rules of Bankruptcy Procedure.

32. Section 152, Title 28, United States Code.

33. There is a class of bankruptcy judicial officers which may in fact currently have what on paper amounts to life tenure. They are the bankruptcy referees who were never reappointed during the transition period, who may continue to serve under the provisions of section 34 of the Bankruptcy Act "until his successor is appointed and qualifies." Such referees do not appear to be affected by section 106(a) of P.L. 98–353 which terminates the terms of "bankruptcy judges" on October 1, 1986, or 4 years from the date of last appointment, whichever is later. And, under the new statutory scheme, their successors cannot be appointed until a "vacancy" in their office occurs. See Section 120(a)(2) of P.L. 98–353. And, under the old Act, "vacancy" meant an actual vacancy, not holdover status. See section 43(c) of the Bankruptcy Act.

prosecution of the trustee's state court action. That desire should not be diluted or thwarted by an erroneous assumption that this court is not disposed to issue the permanent injunction.

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED, AND DECREED that the defendants be, and they are hereby, permanently restrained and enjoined from prosecuting the state court actions against the plaintiffs.